IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

RASHAUN LADALE WILLIAMS,  )
(SPN # 22723-009)  )
          Movant,  )
     )

vs.  )  Civil No. 4:24-cv-_____
     )  Crim No. 4:20-cr-00348-BRW-1

UNITED STATES OF AMERICA,  )
          Respondent.  )

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

AUG 1 9 2024

**TAMMY H. DOWNS, CLERK**
By:_____R. Moore_____
DEP CLERK

## MEMORANDUM OF LAW IN SUPPORT OF MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

COMES Movant, RASHAUN LADALE WILLIAMS ("Williams"), appearing *pro se*, and in support of this motion would show as follows:

### I. JURISDICTION

Williams is timely filing a Motion to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody Pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion") contemporaneously with this Memorandum of Law. Jurisdiction is vested in this District Court that presided over and imposed sentence pursuant to Rule 4(a) of the Rules Governing § 2255 Proceedings. See *Liteky v. United States,* 510 U. S. 540, 562 (1994). Under 28 U.S.C.A. § 2255, federal prisoners "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws

1

of the United States" may move the district "court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C.A. § 2255(a).

## II. STATEMENT OF THE GROUND FOR RELIEF

A.      Whether, the pretrial counsel's failure to: (1) Communicate with Williams and inform him of the relevant circumstances and likely consequences of pleading guilty as opposed to proceeding to trial; (2) Conduct an adequate and independent pretrial investigation; and (3) Attempt to negotiate a favorable Plea Agreement deprived Williams of effective assistance of pretrial counsel under the Sixth Amendment of the Constitution of the United States.

B.      Whether, the sentencing counsel's failure to: (1) Properly discuss and explain the PSR to Williams prior to the Sentencing Hearing; and (2) File substantive objections to the PSR deprived Williams of effective assistance of sentencing counsel under the Sixth Amendment, a fair and just sentence.

C.      Appellate Counsel's Failure To: (1) Communicate and Keep Williams Informed of the Issues He Intended to Raise on Appeal; (2) Allow Williams to Participate in His Appeal and to Include Additional Issues; and (3) Raise Stronger Issues Than the Issues Raised on Appeal by Counsel Deprived Williams of Effective Assistance of Appellate Counsel, and a Fair and Meaningful Appellate Review.

## III. <u>STATEMENT OF THE CASE</u>

### A.    <u>Procedural Background</u>

On March 2, 2022, a grand jury sitting in the United States District Court for the Eastern District of Arkansas, Central Division, returned a three (3) count Indictment charging Williams. See Doc. 3.[1] Count 1s charged Williams with Possession with Intent to Distribute 500 Grams or More, but Less Than 5 Kilograms of Cocaine Hydrochloride, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). *Id*. Count 2s charged Williams with Possession with Intent to Distribute of 400 Grams or More of Fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). *Id*. Count 3s charged Williams with Possession with Intent to Distribute Marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D). *Id*. The Superseding Indictment also contained Forfeiture Allegations, pursuant to 18 U.S.C. § 924(d), 21 U.S.C. §§ 853(a)(1) and (a)(2), 28 U.S.C. § 2461(c). *Id*.

On March 18, 2022, the government filed an Information Seeking Enhanced Statutory Penalty Pursuant to 21 U.S.C. § 851 ("851 Enhancement"). See Doc. 45.

On May 3, 2022, a Change of Plea Hearing was held and Williams entered a guilty plea as to Counts 1s and 2s of the Superseding Indictment, pursuant to a Written

---

[1] "Doc." refers to the Docket Report in the United States District Court for the Eastern District of Arkansas, Central Division in Criminal No. 4:20-cr-00348-BRW-1, which is immediately followed by the Docket Entry Number.

Plea Agreement. See Docs. 48-50.

On August 10, 2022, Williams was sentenced to a total term of 240 months' imprisonment, 5 years' Supervised Release, no Fine or Restitution, and a Mandatory Special Assessment Fee of $200. See Docs. 57-58.

On August 22, 2022, Williams timely filed a Notice of Appeal. See Doc. 60.

On September 7, 2023, the United States Court of Appeals for the Eighth Circuit ("Eighth Circuit") filed a Judgment granting Williams' Motion to Dismiss and the appeal has been dismissed in accordance with the Opinion of Eighth Circuit. See Docs. 68-70.

### B.    Statement of the Relevant Facts

### 1.    Offense Conduct

The United States and Williams, through the advise of his counsel, agreed to the following Factual Basis for the Plea:

> On the night of September 3, 2020, a Little Rock Police Officer saw a white Cadillac Escalade speeding down Stagecoach Road in Little Rock and initiated a traffic stop. The officer approached the driver and asked him for his license. The driver handed him a license from South Carolina that stated that his name was Donovan Williams. The officer attempted to verify the license and was unable to do so. Eventually, the Arkansas State Police arrived with a fingerprint scanner and identified the driver not as Donovan Williams, but as the defendant, Rashaun Ladale Williams. Williams was taken into custody, and officers began an inventory of the vehicle. In the front passenger seat, officers found a bag containing $19,760.00 in cash rubber banded together. Williams consented to the

search of his apartment at 2216 Wilson Road, Apartment B, in Little Rock. Once they arrived at the apartment, Williams told officers that oxycodone and money was in the trunk of a Cadillac sedan parked in the garage. Inside the trunk of the Cadillac, officers found more than $150,000 cash and two vacuum sealed bags of white pills that were later analyzed by chemists at the DEA laboratory. Those two bags contained more than 8000 pills containing fentanyl.

During a search of the apartment, officers found a vacuum sealer, a scale, and a money counter. Inside the master bedroom sink cupboard, officers found a large pill bottle containing more white pills similar to the ones found in the car. After the pills were analyzed at the DEA lab, chemists found that pill bottle contained more than 720 pills containing fentanyl. Under the kitchen sink, officers found a vacuum sealed bag of white powder, which was analyzed by the DEA laboratory and found to contain more than 1000 grams of cocaine. The drugs were tested by the DEA Southeast Laboratory as approximately 1 kilogram of a mixture containing cocaine and approximately 650 grams of a mixture containing fentanyl.

See Doc. 49 at 5-6.

### 2.    Plea Proceeding

On May 3, 2022, a Change of Plea Hearing was held before Judge Billy Roy Wilson. See Doc. 48. Williams entered a guilty plea on Counts 1s and 2s of the Superseding Indictment, pursuant to a Written Plea Agreement. See Docs. 49-50. In the plea agreement, the parties agreed to the following guideline stipulations:

A.    The parties agree that the base offense level for the offense of conviction is determined by the quantity of controlled substances involved in the offense. The parties agree that the base offense level is calculated using the quantity of cocaine and fentanyl involved in the offense, which is approximately 1 kilogram of a mixture containing cocaine and approximately 650 grams of a

mixture containing fentanyl, resulting in a base offense level of 30 under USSG § 2D1.1. If the defendant is a career offender under U.S.S.G. § 4B1.1, the base offense level will be 37.

B.  The defendant is eligible for a 2-point reduction for acceptance of responsibility unless the defendant takes any action between the entry of the guilty plea and imposition of the sentence that is inconsistent with acceptance of responsibility, including illegal drug use. The United States will not award the third level reduction at the time of sentencing.

C.  The parties stipulate that no other enhancements or reductions under Section 2D 1.1, Chapter 3, or Chapter 5 of the Guidelines apply, other than those specifically set out in this agreement and its addendum.

The plea agreement also contained an appeal waiver, which is fully set forth in the parties' plea agreement. In summary, the parties stipulated that Williams waived the right to appeal the conviction and the sentence imposed. See *Id.* at 4-5.

### 3.  Sentencing and Appellate Proceedings

On August 10, 2022, a Sentencing Hearing was held before Judge Billy Roy Wilson. See Doc. 57. At sentencing, Williams was sentenced to 240 months on Counts 1s and 2s of the Superseding Indictment, to run concurrently; for a total term of 240 months' imprisonment. See Doc. 58. It is followed by a 5-year Supervised Release. *Id.* The Court also ordered a payment of a Mandatory Special Assessment Fee of $200. *Id.*

On August 22, 2022, Williams appealed his sentence after pleading guilty to two drug crimes. He argued that the District Court violated his Sixth Amendment right to

6

counsel at sentencing when it allowed his lawyer to withdraw, neglected to appoint another one, and failed to warn Williams about the risks of proceeding on his own. Because the Eighth Circuit found that Williams waived his right to challenge these issues, they dismissed his appeal. See Docs. 60, 62, 68-70.

## IV. COGNIZABLE ISSUES UNDER 28 U.S.C. § 2255

The function of a § 2255 Motion to Vacate, Set Aside or Correct Sentence is to inquire into the legality of the federal prisoner's detention. See *Heflin v. United States*, 358 U. S. 415, 421 (1959). Section 2255 provides four grounds that justify relief for a federal prisoner who challenges the imposition or length of his or his detention: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction to impose such sentence"; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) "that the sentence is otherwise 'subject to collateral attack.'" 28 U. S. C. § 2255 (1994). Despite this apparently broad language, violations of federal law are only cognizable if they involve a "fundamental defect" resulting in a "complete miscarriage of Justice." *Davis v. United States*, 417 U. S. 333, 346 (1974).

Section 2255 permits a federal prisoner to bring a collateral challenge by moving the sentencing court to vacate, set aside, or correct the sentence. 28 U.S.C. § 2255(a). Once a petitioner files a § 2255 motion, "[u]nless the motion and the files and records

of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). A petitioner is entitled to an evidentiary hearing if he "alleges facts that, if true, would entitle him to relief." *Deltoro-Aguilera v. United States*, 625 F.3d 434 (8th Cir. 2010). "[A] petitioner need only allege – not prove – reasonably specific, non-conclusory facts that, if true, would entitle him to relief."*Owens v. Balt. City State's Attorneys Office*, 767 F.3d 379 (4th Cir. 2014). However, a district court need not hold a hearing if the allegations are "patently frivolous," "based upon unsupported generalizations," or "affirmatively contradicted by the record." *Holmes*, 876 F.2d at 1553.

A § 2255 Motion requires the district court to either order the government to respond or to hold an evidentiary hearing unless the Motion, files and record of the case demonstrate that no relief is warranted. See *Franco v. United States*, 762 F.3d 761 (8th Cir. 2014). "Under 28 U.S.C. § 2255, unless the motion and record as constituted show conclusively that relief is not available, an evidentiary hearing should be held." 28 U.S.C. § 2255(b).

Upon granting a § 2255 Motion, "[t]he court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him . . . or correct the sentence as may appear appropriate." 28 U. S. C. § 2255. The remedy provided in § 2255 is broad

8

and flexible, and entrusts the federal courts with the power to fashion appropriate relief. See *Andrews v. United States*, 373 U. S. 334, 339 (1963).

Finally, in a ruling on a motion under § 2255, the District Court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255.

## V. DISCUSSION

As a preliminary matter, Williams respectfully requests that the Court be mindful that "a *pro se* complaint should be given liberal construction, we mean that if the essence of an allegation is discernible ... then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." See *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015); *Estelle v. Gamble*, 429 U.S. 97 (1976) (same); and *Haines v. Kerner*, 404 U.S. 519 (1972) (same).

A.    **Pretrial Counsel's Failure To: (1) Communicate with Williams and Inform Him of the Relevant Circumstances and Likely Consequences of Pleading Guilty As Opposed to Proceeding to Trial; (2) Conduct An Adequate and Independent Pretrial Investigation; and (3) Attempt to Negotiate A Favorable Plea Agreement Deprived Williams of Effective Assistance of Pretrial Counsel Under the Sixth Amendment of the Constitution of the United States.**

1.    Failure to Communicate with Williams and Inform Him of the Relevant Circumstances and Likely

<u>Consequences of Pleading Guilty as Opposed to Proceeding to Trial</u>

Chapter 1, Rule 1.4: Communication of the Arkansas Rules of Professional Conduct states that:

    (a)    A lawyer shall:

        (1)    promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in RPC 1.0(e), is required by these Rules;

        (2)    reasonably consult with the client about the means by which the client's objectives are to be accomplished;

        (3)    keep the client reasonably informed about the status of the matter;

        (4)    promptly comply with reasonable requests for information; and

        (5)    consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.

    (b)    A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Reasonable communication between the lawyer and the client is necessary for the client effectively to participate in the representation. It is one of the cornerstones of effective legal representation by an attorney.

In this case, John Wesley Hall , Jr. ("Hall"), was Williams' retained counsel from continuing pretrial to sentencing. There was not any reasonable communication from the beginning of this case between Williams and Hall, so that he could effectively participate in his defense. Hall did not meet the standard as set forth above in Rule 1.4 of the Arkansas Rules of Professional Conduct or any other professional norm for that matter. Hall failed to reasonably consult with Williams about the means to be used to accomplish his objective other than confidently push Williams to proceed to trial.

Adequacy of communication depends in part on the kind of advice or assistance that is involved. Because Williams wholly relied on his counsel's advice, Williams acquiesced to same. Hall failed to consult and explain the general strategy and prospects of success and the likely result in the sentence he would receive. The guiding principle is that a lawyer should fulfill reasonable client expectations for information consistent with the duty to act in the client's best interest. Hall failed to do so.

On August 11, 2021, Williams hired Hall to represent him for this case. Hall assure Williams that he would start working on his case immediately. Williams expected Hall to file necessary motions and getting a plea deal. However, Hall just started working on Williams' case in November, when he and his family called him repeatedly. Hall visited Williams once and briefly discussed his case for about 20 minutes. Hall discussed that Williams needed to take the plea deal or else, it would get

11

him 20-30 years. Williams asked about the prior plea offer which Hall sent to him in March (10 years, no upward or downward variances). Hall advised that the March plea offer was no longer good since Williams took too long and the trial was already on the next day after his visit. Williams then pointed out that, it was because Hall failed to meet him and explain it to him until a day before his trial. Then, Williams asked Hall if he had the new Plea Agreement and responded that, he did not have any kind of paperwork [with him]. Halls informed Williams, that because he cooperated, his counsel would get him 10 years with a reduction and he would not be classified as a career offender otherwise, he would get 20-30 years had he opted to take his case to trial which opposed his previous statement that Hall could get him 5 years or even time served. Hall did not accept Williams' call nor responded to his written correspondence because he was always in another case's trial or was out of the office.

In this case, the number of visits is not in question in this case, rather, it is the quality of defense rendered by his counsel. There were days when Williams requested to visit him and discuss his case, yet, Hall made several excuses, like: he was not in the office or he was in Court dealing with a case. Eventually, Williams plead guilty despite confusing and contradicting ideas and suggestions from Hall. His absence of asking Williams' details in an attempt to build a defense resulted to neglect of duty and unfavorable outcome. The counsel's role was more like an aid to the prosecutor and not

as his defense counsel.

In *Hill*, the Court considered a *Strickland* claim based on allegations that the petitioner's lawyer had given deficient advice that caused him to plead guilty instead of proceeding to trial. While there have been many cases analogous to it, it has been understood that *Hill* established a rule applicable to other circumstances when lawyers advise their clients at the plea-bargaining stage of the case. Cf. *Lafler*, supra; Frye, supra; *Padilla*, 130 S. Ct. at 1485 n.12.

In this case, it is apparent from the advice and information given to Williams that his counsel expressly failed to correctly familiarize with the relevant facts of the case, case law, applicable Guidelines and potential consequences of a conviction in his case. Hall failed to properly inform Williams of all these matters, which led to his 240-month sentence. Had Hall done so, Williams would have been properly advised of his actual correct options available. As such, there is a reasonable probability that he would have opted to proceed to trial, had he been properly informed by counsel of the sentencing exposure he faced. Because Williams was a layman of the law, he wholly relied on Hall's advise.

2.   Failure to Conduct an Adequate and Independent Pretrial Investigation

Defense counsel has the obligation to conduct a "reasonably substantial,

independent investigation." *Neal,* 239 F.3d at 688 (quoting *Baldwin v. Maggio,* 704 F.2d 1325, 1332-33 (5ᵗʰ Cir.1983)). The Supreme Court has explained the governing standard:

> Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland,* 466 U.S. at 690-91.

In this case, Hall failed to conduct any kind of a reasonable independent pretrial investigation of his case. Hall failed to research the case law or investigate the facts of Williams' case. For instance, the illegal stop which led to search and seizure. As part of Williams' cooperation with the authorities, he brought them to his house and it ended up to higher drug amount charged to him. In fact, Hall affirmed that, since the traffic stop was illegal and since he cooperated with the authorities, Williams should file motions to have the government and authorities be reminded that they should honor the deal which he had with them. However, even Hall did not file any motion nor knew which motions to file in this case. There was no independent pretrial investigation to

14

challenge the government's case-in-chief. Hall failed to move the Court for a private investigator to independently investigate his case. There was not any kind of independent pretrial investigation conducted whatsoever to Williams' knowledge except for Hall, reading the government's case file and discussing it with the government prosecutor. It is well settled in this circuit that a criminal investigation requires investigators to piece together evidence, often circumstantial and from multiple sources, to prove a defendant's innocence or guilt. See *Sawyer*, 799 F.2d at 1508 ("counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary"(quoting *Strickland*, 466 U.S. at 690-91). Although courts are typically required to show heightened deference to an attorney's strategic decisions supported by professional judgment, where a failure to investigate does not reflect sound professional judgment, such deference is not appropriate. *Id.*

Overall, there was no pretrial investigation was ever conducted to piece together evidence. Hall did not put the government's case to any kind of adversarial test. Had he done so, there is a reasonable probability that Williams would have been benefited with a significantly less harsh sentence.

 3. Failure to Attempt to Negotiate A Favorable Plea
  Agreement

"[C]riminal justice today is for the most part a system of pleas, not a system of trials . . . [T]he right to adequate assistance of counsel cannot be defined or enforced without taking into account the central role plea bargaining plays in securing convictions and determining sentences." *Lafler v. Cooper*, 132 S. Ct. 1376, 1388 (2012). Because of "[t]he reality [ ] that plea bargains have become so central to the administration of the criminal justice system . . . ," *Arkansas v. Frye*, 132 S. Ct. 1399, 1407 (2012), the Supreme Court has recognized that the Sixth Amendment right to counsel "extends to the plea-bargaining process. During plea negotiations defendants are entitled to the effective assistance of competent counsel." *Lafler*, 132 S. Ct. at 1384 (internal citations and quotation marks omitted); see also, *Frye*, 132 S. Ct. at 1407.

In this case, Hall wanted Williams to take this case to trial however, he requested his counsel to meet him and go over the Plea Agreement. Hall failed to explain the content of the plea deal to Williams. On December 1, 2021, Hall sent the Plea Agreement's copy from his prior counsel, Gregory E. Bryant, to Williams, however, he had a very bad vision hindering him to read the entirety of the plea offer. Until the day before the supposed trial, Hall visited Williams to advise him to **TRY** to go trial however, he insisted that he would like to discuss the plea deal because he had been thinking of taking the Plea Agreement but, his counsel never came. After several calls made to Hall with regard to reviewing the agreement, he informed Williams that it was

not his job to discuss the plea deal, not to call him back, and he could speak with his assistant [for his concerns]. On February 3, 2022, Williams' mother passed away and asked Hall if he could file a motion to get him attend his mother's funeral. Williams' family called Hall for a few weeks and when he accepted their call, he rudely told them that he would file a motion to get him temporarily out for the funeral. Since then, they have not heard anything from Hall until Williams' Indictment has been superseded without his knowledge and the Plea Agreement was already off the table. Then, in March, a different plea offer was sent to Williams and again, Hall did not care to explain the details. Hall informed him that he would be in a trial and Williams had within the day to let them know if he plans to receive the offer or not. Considering the vision problem that Williams had, he was literally blind to what the plea offer contained. Hall, being his retained lawyer, should supposedly helped him understand or at least explain the agreement that the government had for him. In fact, Williams could have agreed to the initial plea offer had Hall spared him some time to go through the first plea agreement, however, he failed to do so.

In the plea bargaining stage of criminal proceedings, the second part of the *Strickland* analysis, i.e., the "prejudice" prong, "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); accord *Lafler v. Cooper*, 132 S. Ct. 1376, 1384

(2012); *Arkansas v. Frye*, 132 S. Ct. 1399, 1409-10 (2012). Once the defendant has satisfied the first prong of *Strickland* by establishing that counsel's performance was constitutionally defective, the threshold showing of prejudice required to satisfy the second prong is comparatively low—in such cases, the prejudice prong is satisfied if there is a "reasonable probability" that the defendant would have accepted the Government's plea offer, but-for counsel's ineffective assistance or inadequate advice. *Lafler*, 132 S. Ct. at 1385; see also, *Hodges v. Colson*, 727 F.3d 517, 550 (6th Cir. 2013) (en banc) (citing *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2003), for the proposition that it is easier to show prejudice in the guilty plea context than in other contexts because the claimant need only show a reasonable probability that he would have pleaded differently). Accordingly, if reasonable minds could conclude that a fully informed defendant would have accepted the Government's plea offer, then the defendant is entitled to relief. Moreover, if counsel failed to provide the defendant with an estimated range of the penalties that could result from a trial conviction, the prejudice prong is presumptively satisfied if the difference between the length of the sentence proposed in the Government's plea offer and the sentence imposed after a trial conviction was substantial. See *Morris*, 470 F.3d at 602; *Griffin*, 330 F.3d at 737. When this presumption applies, the defendant is not required to submit additional objective evidence to "support his own assertion that he would have accepted the offer"

if provided with the benefit of effective assistance. *Griffin*, 330 F.3d at 737.

"[T]he negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel." *Padilla*, 130 S. Ct. at 1486. When a defendant persists in a plea of not guilty, a failure to properly inform him about potential sentencing exposure may constitute ineffective assistance. *Id.*

In *Hill*, the Court considered a *Strickland* claim based on allegations that the petitioner's lawyer had given deficient advice that caused him to plead guilty instead of proceeding to trial. While there have been many cases analogous to it, it has been understood that *Hill* established a rule applicable to other circumstances when lawyers advise their clients at the plea-bargaining stage of the case. Cf. *Lafler*, supra; *Frye*, supra; *Padilla*, 130 S. Ct. at 1485 n.12.

In an effort to provide guidance as to how *Hill* applies to differing factual settings, the Supreme Court decided *Lafler* and *Frye* and established a constitutional standard applicable in all of the separate phases of a criminal trial to which the Sixth Amendment applies, including the point at which a defendant decides whether to plead guilty to a crime. In *Lafler*, the Court held that when counsel's ineffective advice led to an offer's rejection, and when the prejudice alleged is having to stand trial, a defendant must show that, but for the ineffective advice, there is a reasonable probability that the plea offer would have been presented to the court, that the court

19

would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the actual judgment and sentence imposed. In *Frye*, the Court held that the Sixth Amendment right to effective assistance of counsel extends to the consideration of plea offers that lapse or are rejected, and that right applies to "all 'critical' stages of the criminal proceedings."

"It is the lawyer's duty to ascertain if the plea is available, that it could possibly lead to a shorter sentence and entered voluntarily and knowingly. He must actually and substantially assist his client in deciding whether to plead guilty. It is his job to provide the accused an "understanding of the law in relation to the facts." *Gonzalez v. Crosby*, 545 U.S. 524, 542 (2005). The advice he gives need not be perfect, but it must be reasonably competent. His advice should permit the accused to make an informed and conscious choice. *Lafler*, supra. In other words, if the quality of counsel's advice falls below a certain minimum level, the client's decision whether to plead guilty or proceed to trial cannot be knowing and voluntary because it will not represent an informed choice. *Id.* Also, whether a defendant pleads guilty or proceeds to trial, he must be aware of "the relevant circumstances and likely consequences" surrounding the plea. *Brady v. United States*, 397 U.S. 742 (1970).

> **B.** **Sentencing Counsel's Failure To: (1) Properly Discuss and Explain the PSR to Williams Prior to the Sentencing Hearing; and (2) File Substantive Objections to the PSR Deprived**

20

**Williams of Effective Assistance of Sentencing Counsel Under the Sixth Amendment, A Fair and Just Sentence.**

1-2. **Failure Properly Discuss and Explain the PSR to Williams Prior to the Sentencing Hearing and File Substantive Objections to the PSR Deprived Williams of Effective Assistance of Sentencing Counsel Under the Sixth Amendment, A Fair and Just Sentence**

Prior to sentencing, the PSR was released by the probation department. When the PSR came back, Williams was never counseled by Hall of how the PSR would later affect him. Hall failed to correctly discuss and explain the PSR to Williams. He did not explain it to him so that he could understand the sentencing calculations and the relevant conduct of the offense. Further, Hall failed to file any substantive objections to the PSR. The only advice that Hall gave Williams was that, he would have a hearing for the discussion of his cooperation and how much time he could get off. Until the PSR came back and so, Williams expected that he would get the advise of Hall– 10 years' imprisonment with reduction however, it said otherwise. Williams then called the Probation Department and it was explained that, he would not get any reduction nor 10 years. Williams called Hall after learning about the PSR, yet his counsel remained speechless and dropped the call.

Furthermore, Hall failed to argue the issues properly, as follows:

**ERRONEOUS CAREER OFFENDER.** In this case, the District Court erred in determining that Williams was a career offender within the

meaning of U.S.S.G. § 4B1.1(a), which provides:

A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

Williams was over 18 years of age when he committed this offense, and it was a "controlled substance" offense within the meaning of U.S.S.G. § 4B1.1(a). His sentence was therefore subject to being enhanced under the "Career Offender" Guidelines provision, § 4B1.1, if he had "at least two prior felony convictions of either a controlled substance offense or a crime of violence. "The PSR construed U.S.S.G. § 4B1.2, which defines a "controlled substance offense" and a "crime of violence."

Williams was sentenced as a career offender because before he was convicted in federal court of the present offense, Williams had at least three prior felony convictions of either a crime of violence or a controlled substance offense, enumerated as follows (See Exhibit 5):

1) 8/3/2001: Possession with Intent to Deliver Cocaine (CR-01-369) in Pope County Circuit Court, Arkansas. On November 19, 2002, Williams was sentenced to 72 months;

2) 6/26/2002: Delivery and Possession with Intent to Deliver Cocaine (CR-02-332), in Pope County Circuit Court, Arkansas. On November 19, 2002, Williams was sentenced to 72 months' imprisonment.

Here, Williams contests that he had at least two felony convictions of either a crime of violence or a controlled substance offense, explained as follows:

Under Section 4A1.2(a), a "prior sentence" is "any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea

of nolo contendere, for conduct not part of the instant offense." USSG §4A1.2(a)(1). The term "prior sentence" "is not directed at the chronology of the conduct, but the chronology of the sentencing." *Mitchell v. United States*, 2016 U.S. Dist. LEXIS 21923 (S.D. Ala. Jan. 8, 2016).

Multiple prior sentences. Prior sentences are always counted separately if the offenses were separated by an intervening arrest (the defendant is arrested for the first offense prior to committing the second offense). Section 4A1.2(a)(2) states that "If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day." USSG § 4A1.2(a)(2). For purposes of scoring criminal history points, if prior sentences are counted as a single sentence and concurrent sentences are imposed, the longest sentence of imprisonment dictates the point total. *Id.*

Under § 4A1.1(a) or (b), points are added for each prior "sentence of imprisonment." Section 4A 1.2(b)(1) defines "sentence of imprisonment" as a sentence of incarceration with reference to the maximum imposed. In commentary, the Commission states that, "to qualify as a sentence of imprisonment, the defendant must have actually served a period of imprisonment on such a sentence or if the defendant escaped, must have escaped from a sentence that he or she would have been required to serve." The amount of time counted is the stated maximum of the imposed sentence, irrespective of whether the entire term was served, or whether the term pronounced was a determinate or indeterminate term. "A sentence imposed in the alternative, with a fine or other non-incarcerative disposition as an alternative to a term of imprisonment, does not count as a sentence of imprisonment." A conviction where the imposition of sentence was totally suspended or stayed is counted as a prior sentence under § 4A1.1(c), and thus results in one criminal history point.

The First Circuit ordered similar remands in at least two prior decisions. See *United States v. Ahrendt*, 560 F.3d 69 (1st Cir. 2009); *United States v. Godin*, 522 F.3d 133 (1st Cir. 2008). Godin and Ahrendt involved challenges to the district court's refusal to "group" certain prior offenses

23

for purposes of calculating the Guideline Sentencing Range ("GSR"). When the defendants had been sentenced, the applicable guideline provided that prior offenses were to be counted separately unless they "(A) occurred on the same occasion, (B) were part of a single common scheme or plan, or (C) were consolidated for trial or sentencing." *Ahrendt*, 560 F.3d at 78 (quoting U.S.S.G. §4A1.2(a)(2) cmt. n.3 (2004)). In both cases, the First Circuit concluded that the district court had correctly applied that guideline provision. While the appeals were pending, however, the Sentencing Commission adopted a non-retroactive amendment under which prior offenses were to be counted as one if "the sentences were imposed on the same day." *Id.* at 79 (quoting USSG §4A1.2(a)(2)) (emphasis omitted). In both *Godin* and *Ahrendt*, the defendants' prior offenses would have been grouped together under this amended provision. We recognized that, because the amendment was non-retroactive, "neither defendant was entitled . . . to a remand because neither could show that an error occurred at sentencing." *Id.* at 80. Notwithstanding the lack of error, we deemed it prudent to remand, *id.*, to allow the sentencing judge the opportunity "to consider the Commission's current thinking," as reflected in the amendment, *Godin*, 522 F.3d at 136. In a more recent case, *United States v. Rodriguez-Rosado* (1st Cir. 2017), which was decided on April 19, 2017, the First Circuit granted the same judgment - vacated the district court's orders denying Rodriguez-Rosado motion to reduce sentence and remand for further proceedings. Such a remand will allow the court to benefit from the wealth of experience that it has gained adjudicating motions to reduce sentences pursuant to AD 14-426. This process was brand-new when the court ruled on Rodriguez-Rosado's motion. Remand will also foster confidence in the judicial system by ensuring that Rodriguez-Rosado's motion is handled similarly to those of his ten co-defendants who were potentially eligible for a sentence reduction. The question of whether to grant a sentence reduction "is a matter [Congress] committed to the sentencing court's sound discretion." *United States v. Zayas-Ortiz*, 808 F.3d 520, 523 (1st Cir. 2015) (alteration in original) (citation omitted).

The District Court considered Williams' PSR in its conclusion that he qualified as a career offender pursuant to U.S. Sentencing Guidelines

Manual § 4B1.1. *Shepard v. United States*, 544 U.S. 13, 26 (2005). The PSR recited a short summary of Williams' prior convictions, however, the Court failed to confirm with Williams if he affirms or denies the accuracy of the "factual statements."

**DRUG CALCULATION.** The drug weight is an element of the offense and that any fact that increases a mandatory minimum penalty is an element that must be charged in an indictment and proved to a jury beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and *Alleyne v. United States*, 570 U.S. 99, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013). Under those two cases, in *Stanback*, if he was sentenced today, his sentence would be based on distributing 5 grams or more of cocaine base, and not 4.5 kilograms of cocaine base.

In *Apprendi*, the Supreme Court held that the Sixth Amendment to the Constitution requires that any fact that increases the penalty for a crime beyond the prescribed statutory maximum, other than the fact of a prior conviction, must be submitted to a jury and proved beyond a reasonable doubt. In *Alleyne*, the Court applied *Apprendi* to the federal mandatory minimum and maximum sentencing scheme and held that because mandatory minimum sentences increase the penalty for a crime, any fact that increases the mandatory minimum is an element of the crime that must be submitted to the jury. *Id.* at 116, 133 S.Ct. 2151 (overruling *Harris v. United States*, 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002) ).

Neither *Apprendi* nor *Alleyne* are retroactively applicable on collateral review. See *United States v. Sanders*, 247 F.3d 139, 146 (4th Cir. 2001) (joining other circuits in finding that *Apprendi* does not apply retroactively to cases on collateral review); and *United States v. Stewart*, 540 Fed.Appx. 171 (4th Cir. 2013) (*per curiam*) (noting that *Alleyne* has not been made retroactively applicable to cases on collateral review). However, for a period of time after *Apprendi* was decided, including before passage of the Fair Sentencing Act in 2010, the jury ordinarily made a finding regarding the threshold penalty, but the court could and did impose statutory-minimum penalties regardless of any jury finding.

25

That practice was authorized by *Harris*, and *Alleyne* did not overrule *Harris* until three years later, and three years after the Fair Sentencing Act was enacted. Nonetheless, Congress, when drafting the First Step Act in 2018, surely did not intend for courts to disregard the last six years of Supreme Court federal sentencing jurisprudence and this court declines to do so.

*Alleyne* made clear that in order to preserve a defendant's Sixth Amendment right to a jury trial, any fact that increases the statutory mandatory minimum sentence is an element of the crime which must be submitted to the jury. *Alleyne*, 570 U.S. at 116, 133 S.Ct. 2151. In this case, Williams plead guilty for possession with intent to distribute 500 grams or more, but less than 5 kilograms of cocaine hydrochloride and possession with intent to distribute of 400 grams or more of fentanyl. Under *Alleyne*, this court is not free to ignore that finding and impose a penalty based on 650 grams of fentanyl equivalent as referenced in the PSR. Thus, although *Apprendi* and *Alleyne* are not retroactively applicable on collateral review, this court joins other courts in finding that their holdings are applicable in the context of the First Step Act. See *United States v. Simons*, No. 07-CR-00874, 375 F.Supp.3d 379, 487, 2019 WL 1760840 at *6 (E.D.N.Y. Apr. 22, 2019) (citing *Alleyne* and finding that statutory penalties are determined by facts submitted to a grand jury, trial jury, or established by a guilty plea while findings by a judge may be used to determine a sentence within the statutory penalties and cannot change "the mandatory minimum sentence now applicable"); *United States v. Dodd*, No. 3:03-CR-18-3, 372 F.Supp.3d 795, 2019 WL 1529516 (S.D. Iowa, Apr. 9, 2019) (finding in a First Step Act case that "[b]oth *Apprendi* and *Alleyne* are binding on this Court for sentencings held today."); *United States v. Davis*, No. 07-CR-245(S)(1), 2019 WL 1054554 (W.D.N.Y. Mar. 6, 2019), appeal docketed, No. 19-874 (2d Cir. Apr. 5, 2019) ("[I]t is the statute of conviction, not actual conduct, that controls eligibility under the First Step Act."); see also *United States v. Laguerre*, No. 5:02-CR-30098-3, 2019 WL 861417 (W.D. Va. Feb. 22, 2019) (relying without discussion on charged drug weight rather than PSR weight to find defendant eligible for relief).

Had Williams been prosecuted after passage of the Fair Sentencing Act,

the government would have had to allege 500 Grams or More, but Less Than 5 Kilograms of Cocaine Hydrochloride (Count 1s) + 400 Grams or More of Fentanyl (Count 2s), even though he was held accountable for 650 grams of fentanyl on Count 2s, resulting to Base Offense Level 30.

**ADDITIONAL 1-POINT REDUCTION FOR ACCEPTANCE OF RESPONSIBILITY.** The U.S. Sentencing Guidelines Manual, § 3E1.1, provides for an offense level reduction of up to three points for a defendant's acceptance of responsibility, as follows:

>   (a)    If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.

>   (b)    If the defendant qualifies for a decrease under subsection (a), . . . and the defendant has assisted authorities in the investigation or prosecution of his own misconduct by taking one or more of the following steps:

>>      (1)    timely providing complete information to the government concerning his own involvement in the offense; or

>>      (2)    timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently, decrease the offense level by 1 additional level.

The defendant has the burden of demonstrating by a preponderance of the evidence that a reduction for acceptance of responsibility is warranted. *United States v. Benjamin*, 138 F.3d 1069, 1075 (6th Cir. 1998) (citing United States v. Williams, 940 F.2d 176, 181 (6th Cir. 1991)). "The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review." USSG § 3E1.1 application note 5; see *United States v. Moored*, 997 F.2d 139, 145 (6th

Cir. 1993). "Because it generally a question of fact, the trial court's determination of whether a defendant has accepted responsibility normally enjoys the protection of the 'clearly erroneous' standard, and will not be overturned unless it is without foundation. *Morrison*, 983 F.2d at 732 (citations omitted). Questions of law, however, such as the appropriate application of a guideline to a particular set of facts, are subject to *de novo* review. Morrison, 983 F.2d at 732 (citations omitted).

In this case, Williams was advised by Hall during the pretrial to proceed to trial which caused the government not to award him the additional 1-point reduction pursuant to USSG § 3E1.1(b). Williams contends that the district court erred when it refused to grant him credit for acceptance of responsibility when evidence shows that Williams cooperated fully with arresting officers. He provided consented to its search and seizure. He later discussed his crimes with federal investigators, offered assistance, and timely pled guilty. Based on these facts, Williams pled guilty to the Superseding Indictment with the hope that he will receive a reduction of sentence for acceptance of responsibility (as advised by his counsel). Williams has accepted responsibility for the offense as demonstrated by pleading guilty. If new facts come to light that indicate that the defendant has not accepted responsibility within the meaning of the Sentencing Guidelines, for example, if the defendant gives false information to his probation officer and/or refuses to provide all financial information requested by his probation officer, or gives false information during his plea proceedings, the government could elect to withdraw the recommendation for acceptance of responsibility under USSG 3E1.1(b).

Without the career offender enhancement and applying the correct drug amount, and additional 1-point reduction pursuant to USSG 3E1.1(b) Williams' adjusted offense level would be level 21 after a reduction of 3-level for acceptance of responsibility applies. This would bring his guideline imprisonment a significantly less harsh sentence range.

Prior to sentencing, Hall failed to properly argue the aforementioned issues.

Instead, after Williams entered into a guilty plea, he withdrawn himself from this case.

Williams was confused by the way the Guidelines worked in his case. Because Williams was unfamiliar with the federal judicial system and unschooled in federal law, he was forced to wholly rely on his attorney's advice. Had Hall studied his case before advising Williams to plead guilty, he could have had a lower sentence.

No reasonably competent counsel would have failed to object to the PSR's guideline calculations, especially in the face of the parties' Plea Agreement, and there was no arguable strategy for the failure to do so. The error of Williams's counsel in failing to challenge in any way the calculations contained in the PSR was "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

As such, Williams received a sentence of 240 months' imprisonment and Hall's failure to properly argue PSR objections and failure to object to his sentence being substantively unreasonable were neglected.

C.    **Appellate Counsel's Failure To: (1) Communicate and Keep Williams Informed of the Issues He Intended to Raise on Appeal; (2) Allow Williams to Participate in His Appeal and to Include Additional Issues; and (3) Raise Stronger Issues Than the Issues Raised on Appeal by Counsel Deprived Williams of Effective Assistance of Appellate Counsel, and a Fair and Meaningful Appellate Review**.

During the appeal, Geoffrey Kearney ("Kearney") seldom communicated with him which made him unable to participate in his appeal and share his inputs. Williams

was not briefed by his lawyer on what to expect on his appeal process, either. Lastly, Williams was unaware that it was affirmed. Since then, Williams did not hear anything from his counsel.

Williams must show that appellate counsel failed to raise an obvious issue that was stronger than the other claims raised and that prejudice flowed from that failure. "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983). Prejudice exists if "there is a reasonable probability that the issue his appellate attorney failed to raise would have altered the outcome of the appeal, had it been raised." *Williams v. Anderson*, 460 F.3d 789 (6th Cir. 2006).

The relevant question is whether appellate counsel was "objectively unreasonable" in failing to raise meritorious claims on direct appeal that were stronger than the ones raised by him. If so, whether there is a "reasonable probability that, but for his counsel's unreasonable failure" to raise these claims, "defendant have prevailed on his appeal." See *Lordi v. Ishee*, 384 F.3d 189 (6th Cir. 2004) (applying *Strickland*, 466 U.S. at 687-91, 694). In considering a claim of ineffective assistance of appellate counsel, "when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome") See *Bowen v. Foltz*, 763

30

F.2d 191, 195 (6th Cir.1985).

Had Kearney effectively challenged the career offender enhancement, additional 1-point reduction for acceptance of responsibility, and properly arguing the drug calculation on appeal, there is a reasonable probability that he would have won his appeal.

## VI. CONCLUSION

For the above and foregoing reasons, Williams' sentence should be vacated for resentencing without the career offender enhancement. In the alternative, an evidentiary hearing should be held so that Williams may further prove his meritorious ground for relief, resolve any disputed facts, and expand an incomplete record.

Respectfully submitted,

Dated: ~~July~~ 14, 2024
Aug

RASHAUN LADALE WILLIAMS
REG. NO. 22723-009
FCI BEAUMONT MEDIUM
FEDERAL CORR. INSTITUTION
P.O. BOX 26040
BEAUMONT, TX 77720
Appearing *Pro Se*

31